# IN THE CIRCUIT COURT FOR RUTHERFORD COUNTY, TENNESSEE

| | | |
|---|---|---|
| ASHLEY HANNAH and STEPHEN HANNAH, | ) | |
| | ) | |
| Plaintiffs, | ) | **FILED** |
| | ) | JUL 11 2016 |
| vs. | ) No. 71581A | ____O'CLOCK____ M |
| | ) JURY DEMAND | MELISSA HARRELL, CLERK |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) | DEPUTY CLERK |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Comes now Ashley Hannah and Stephen Hannah (hereinafter "Plaintiffs"), by and through counsel, and for their Complaint against State Farm Mutual Automobile Insurance Company ("Defendant"), state as follows:

### PARTIES

1. Plaintiff Ashley Hannah is married to Plaintiff Stephen Hannah, and is a resident and citizen of Smyrna, Rutherford County, Tennessee.

2. Plaintiff Stephen Hannah is married to Plaintiff Ashley Hannah, and is a resident and citizen of Smyrna, Rutherford County, Tennessee.

3. Defendant is an insurance company doing business in the State of Tennessee and with its principal place of business at State Farm Mutual Automobile Insurance Company, One State Farm Plaza, Bloomington, IL 61710 and may be served through the Commissioner of Insurance for the State of Tennessee.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to the provisions of Tennessee Code Annotated §16-10-101, et seq.

5. Venue is proper in this Court pursuant to Tennessee Code Annotated § 20-4-101, et seq.

## FACTS

6. On May 9, 2015, Ashley Hannah, as driver, and Stephen Hannah, as passenger, were involved in a vehicle accident on May 9, 2015, on Rock Springs Road, Rutherford County, Tennessee.

7. The vehicular accident was caused by the negligent driving of Jose Polly Cajeras, as set forth in more detail in the lawsuit currently pending in Rutherford County Circuit Court Case No. 71269.

8. Plaintiffs suffered and continue to suffer from injuries related to the accident.

9. Defendant provides automobile insurance coverage to Plaintiffs under a policy which was in full force and effect on the day of the aforementioned vehicle accident of May 9, 2015.

10. Plaintiffs have uninsured/underinsured motorist coverage through Defendant per the aforementioned policy.

11. After determining that Jose Polly Cajeras lacked sufficient insurance to address the extent of the medical expenses and personal injuries sustained by the Plaintiffs in this accident, Plaintiffs, through their attorney, engaged Defendant in discussions regarding Plaintiffs' underinsured motorist benefits available to them per the aforementioned policy.

12. Upon information and belief, Plaintiffs, through their attorney, first received notice from Defendant that Drew Smith would be the adjustor for their claims on July 22, 2015.

13. Upon information and belief, Plaintiffs, through their attorney, left voice messages for Drew Smith on August 3, 6, 12, and 18 of 2015.

14. Upon information and belief, Plaintiffs, through their attorney, were able to speak with Drew Smith on August 24, 2015, and Drew Smith advised Plaintiffs' counsel that he was no longer the Tennessee adjuster and Martha Vera-Espitia is the new adjuster.

15. Upon information and belief, Plaintiffs, through their attorney, left voice messages for Martha Vera-Espitia on August 24 and 31, 2015, as well as September 4, 9, and 24 of 2015.

16. Upon information and belief, on September 25, 2015, Plaintiffs, through their attorney, were advised by Defendant that Ashley Coble was the "handler" and Heather Dugan was the "supervisor" for the claim.

17. Upon information and belief, on September 25, 2015, Plaintiffs, through their attorney, spoke with Ashley Coble, and Ashley Coble informed Plaintiffs' counsel that Peter Matzen was the new underinsured motorist representative for Defendant and informed Plaintiffs' counsel that Martha Vera-Espitia was never listed as the adjuster for this claim.

18. Upon information and belief, on September 25, 2015, Plaintiffs, through their attorney, spoke with Peter Matzen, who informed Plaintiffs' counsel that he just became aware that he was the adjuster on the case, just took over 100 Tennessee underinsured motorist claims, and needs to familiarize himself with the process before moving forward.

19. Upon information and belief, on October 14, 2015 and October 19, 2015, Plaintiffs' counsel left voice messages for Peter Matzen.

20.     Upon information and belief, on September 19, 2015, Plaintiffs, through their attorney, were informed that Rob West was the new adjuster for State Farm.

21.     On September 20, 2015, Plaintiffs' counsel emailed Rob West, demanding the defense limits be paid for the underinsured motorist coverage.

22.     On November 2, 2015, Plaintiffs' counsel sent Rob West the medical records for the claim.

23.     Upon information and belief, Plaintiffs, through their attorney, followed up with Rob West on November 17, 2015, and were told that they would receive news very soon as to their underinsured motorist claim.

24.     Upon information and belief, Plaintiffs' counsel did not hear back from Rob West, but instead followed up by leaving voice messages on December 2, 3, 7, and 14, 2015.

25.     Upon information and belief, Plaintiffs' counsel spoke to Rob West on December 15, 2015, and was advised by him that Defendant would offer $100,000 in underinsured motorist benefits, but that Defendant just had to determine how to split the policy.

26.     Upon information and belief, Plaintiffs, through their attorney, called Defendant and were informed on December 30, 2015, that Rob West was no longer handling Tennessee claims on behalf of Defendant.

27.     Upon information and belief, on December 30, 2015, Plaintiffs' counsel spoke with Defendant's employee, Marty Reid, who informed Plaintiffs' counsel that the new representative of Defendant was again Peter Matzen.

28.     Upon information and belief, Plaintiffs' counsel called and left a voice message for Peter Matzen on January 5, 2016.

29. Upon information and belief, Plaintiffs' counsel called and left a voice message for Peter Matzen on January 8, 2016, and was informed he was out of the office until January 11, 2016.

23. Upon information and belief, Plaintiffs' counsel called and left a voice message for Peter Matzen on January 11, 2016.

24. Upon information and belief, Plaintiffs' counsel spoke with Peter Matzen on January 26, 2016, and Peter Matzen directed Plaintiffs' counsel to Matzen's supervisor, Todd Kajioka.

25. Upon information and belief, on January 27, 2016, Plaintiffs' counsel was informed by Todd Kajioka that Plaintiffs should speak with Peter Matzen, as Peter Matzen knows Defendant's position.

26. Upon information and belief, Plaintiffs' counsel unsuccessfully attempted to call Todd Kajioka on January 28 and 29 of 2016, as well as February 1, 2, 2016.

27. Upon information and belief, on February 3, 2016, Plaintiffs' counsel spoke with Todd Kajoika, and informed him of the previous offer made by Defendant.

28. Upon information and belief, Plaintiffs' counsel contacted Todd Kajioka in late February 2016, to schedule a conference call with him and counsel for Amica Insurance, the automobile insurance carrier for Jose Polly Cajeras, to discuss settlement.

29. Prior to this conference call, Amica had already agreed to pay its policy limits to the Plaintiffs.

30. The conference call among Plaintiffs' counsel, Defendant (through Todd Kajioka), and Amica (through its attorney Edward Babb), occurred on March 3, 2016.

31. During the conference call of March 3, 2016, Defendant, through Todd Kajioka, agreed to pay $99,000 to Stephen Hannah in exchange for a full and final release of all claims, as well as an additional $1,000 to Ashley Hannah if it was determined that her claim was worth more than $99,000, in exchange for a full and final release of all claims.

32. On March 21, 2016, Attorney Edward Babb, on behalf of Amica, prepared a memorandum outlining the verbal settlement agreement. A copy of this agreement is attached hereto as Exhibit A.

33. On April 8, 2016, Attorney Edward Babb advised Plaintiffs to forward the agreement that was discussed to Defendant for its review and signature. Exhibit A.

34. After receiving the settlement agreement, Defendant advised Plaintiff that the agreement would not be honored.

## COUNT I - BREACH OF CONTRACT AGAINST DEFENDANT

35. Plaintiffs re-allege and incorporate herein the allegations set forth in paragraphs 1-34 of this Complaint.

36. A settlement agreement is merely a contract between parties to litigation and issues of enforceability of a settlement agreement are governed by contract law.

37. An agreement, whether written or oral, is enforceable if the agreement is sufficiently definite, not against public policy, and there is a meeting of the minds and mutual assent to the terms of the agreement, with consideration.

38. Based upon the vehicle accident on May 9, 2015, Defendant is liable to Plaintiffs for underinsured motorist damages per their policy of insurance providing the same.

39. Plaintiffs, in exchange for releasing any and all claims against State Farm, orally agreed to accept no less than $99,000 and no more than $100,000 on March 3, 2016.

40. Upon information and belief, multiple representatives of Defendant, including at least one supervisor, approved this agreement.

41. After the oral agreement was reached, a third party to the settlement discussions, counsel for Amica, Edward Babb, drafted a settlement agreement, to be sent to Defendant for its signature.

42. Defendant has refused to follow through with its obligation to pay at least $99,000 and no more than $100,000, in satisfaction of any and all claims of Plaintiffs, in regards to the May 9, 2015 vehicle accident.

43. The contract was sufficiently definite, as Attorney Edward Babb, a third-party, sent the agreement to Defendant and simply requested that Defendant sign and return the agreement, as opposed to any continuing negotiations of terms.

44. Plaintiffs have been damaged, and continue to be damaged, by Defendant's breach of contract.

45. To date, Plaintiffs have received no compensation from Defendant in regards to Plaintiffs' underinsured motorists' coverage.

## COUNT II - BAD FAITH SETTLEMENT OF INSURANCE CLAIM BY DEFENDANT

46. Plaintiffs re-allege and incorporate herein the allegations set forth in paragraphs 1-45 of this Complaint.

47. Pursuant to Tenn. Code Ann. § 56-7-105, an insurer who refuses to pay an insurance claim after demand has been made shall be liable to the holder of the policy for a sum not to exceed 25% of the liability for the loss, including, but not limited to, attorneys' fees, if the refusal to pay the loss was not in good faith.

48. Plaintiffs have established an oral agreement with Defendant for Defendant to pay at least $99,000 and no more than $100,000 in exchange for Plaintiffs full and final release of any and all claims.

49. Defendant has refused to comply with this oral agreement.

50. Upon information and belief, Defendant has not advised Plaintiffs as to why Defendant believes the oral agreement is not an enforceable contract.

51. Upon information and belief, Defendant does not have a good faith reason to deny the validity of the oral agreement.

52. Defendant's bad faith in settling this claim is further evidenced by Rob West's December 15, 2015 statement that Defendant was going to pay $100,000 to Plaintiffs under the policy, once it determined how to split the proceeds.

53. Defendant's bad faith in settling this claim is further evidenced by the sheer number and juggling of adjusters who were supposedly assigned to handle this case, including Peter Matzen twice.

54. Plaintiffs have been injured and continue to be injured by Defendant's bad faith, and have incurred additional costs, including attorneys' fees, as a result of Defendant's failure to comply with the terms of the settlement agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for and request the following relief:

(a) That Defendant be required to pay Plaintiffs damages in an amount no less than $99,000 and no more than $100,000, per the term of the settlement agreement, plus prejudgment interest;

(b) That Defendant be required to pay Plaintiffs' attorneys fees and other costs expended in bringing this action, pursuant to Tenn. Code Ann. §56-7-105 as well as any other penalties and compensation available per this statute;

(c) That Defendant be required to pay the costs of this action;

(d) The right to a twelve (12) person jury trial; and

(e) That the Court award Plaintiffs such other and further relief as is just and equitable.

Respectfully Submitted by,

*/s/ L. Gino Marchetti*

L. Gino Marchetti, BPR # 5562
Keith W. Blair, BPR # 015366
Charles Michels, BPR # 031232
**Taylor, Pigue, Marchetti & Blair, PLLC**
2908 Poston Avenue
Nashville, TN 37203
(615) 320-3225
cmichels@tpmblaw.com

## COST BOND

We are surety for all court costs incurred in this matter.

*/s/ L. Gino Marchetti, Jr./Keith W. Blair*

L. Gino Marchetti, Jr./Keith W. Blair